## K. JUBEY *vs.* J. W. PUNI *et al.*

### IN EQUITY.  BEFORE MCCULLY, J.

### NOVEMBER, 1882.

A partnership held to be proved by circumstances, there being no written agreement: and an accounting ordered.

### DECISION OF MCCULLY, J.

The question to be determined is whether there was a partnership between plaintiff and defendant in respect to the crop of twenty-three acres of sugarcane at Koloa, Kauai, grown for the Koloa Sugar Company's Mill, as is claimed by the plaintiff, or whether the plaintiff was a servant employed as overseer of the work, as claimed by the defendant.

There is no written agreement of partnership.

Neither of the partners is a business man.

The evidence as to their transactions with each other is vague, and, in important respects, conflicting.

I will endeavor to summarize the several items of testimony offered for the determination of the case, and comment on their bearing and effect.

The transaction commenced July, 1878. The plaintiff shows a letter dated July 29th, 1878, written by the defendant from Koloa, to him in Honolulu, where he had gone for the purpose of shipping men for the enterprise. This letter was imperfectly rendered into English at the trial. I have given it some study since. The writing is not always clear, and I think it is characterized by the imperfect, broken native which some Hawaiians use in addressing foreigners who, they suppose, are not well acquainted with their language. I translate it as follows:

Koloa, July 29th, 1878.

To JUBEY, Japanese, Pelekane, Honolulu.

Aloha between us. I have received your letter speaking of

Hackfeld & Co.'s shipping (men) in the name of J. W. Wright & Co. for the Koloa Company. So let my name be written outside the shipping contract, that they are to labor with me for the time they contract. I to refund the money formerly paid on the land. (?) Just as we formerly spoke of, so in all respects shall it be. Don't forget to give aloha to Umeke and Koko. If you want Koko to come back here let him come. I am not angry with you as your letter indicates.

Jube, don't fail to look up shipped men. If (or when) you get five men, return and we will unite in raising cane—so I did with Kiana, Chinaman; I didn't trick him. I divided equally the money with him. It was done the same by John Hobbs. We know about that. His Kanakas remained with him till his death. Truly, Amen.

With much aloha,<br>
J. W. PUNI, Koloa.

Defendant's testimony concerning this letter is that the partnership which had been proposed depended on plaintiff's furnishing capital. He nowhere shows how much capital was required from plaintiff, and that as plaintiff failed to get capital the project of partnership failed and plaintiff labored for defendant on wages.

But plaintiff testifies that he did furnish $258, and it was with that money that he went to Honolulu, paid his expenses and the advances of such men as he got. He produces the labor contract of one man shipped to himself.

My inference from this section of the testimony is that the parties had come to their agreement as to partnership, and that plaintiff came to Honolulu in pursuance of the partnership. The plaintiff is definite in his statement of the amount he furnished; the defendant does not say how much he required. He makes a general denial of plaintiff's contributing anything. Besides, it will be seen the partnership was based on the plaintiff contributing most of the personal labor, and defendant most of the cash, although this was done for the most part by the Koloa Sugar Company as advances on the crop.

In this visit to Honolulu the plaintiff broke up a building he owned here and sent the lumber to Kauai, where it was put into the building which was the residence of plaintiff and laborers on this land while cultivating the crop, being built for the purpose of making the crop.

The defendant admits this, but says that the boards were of but little value, and that he blamed the plaintiff for sending them at charge for the freight. But why should plaintiff have sent them and defendant have put them into his house if they were not partners, but employer and employee. The defendant testifies that he bought new lumber, but the value of it was less than $50, and the whole house was of but little value, and plaintiff contributed a considerable portion at least towards it.

Considering these two acts in connection with the visit to Honolulu as proving a partnership formed, acts done in pursuance thereof, when did the parties agree that the partnership ceased and another relation commenced?

Several witnesses testify to hearing and taking part in conversations with the parties, wherein they agreed to become partners. Against these the defendant produces witnesses who testify to hearing an agreement for labor at $15 per month and found.

I give quite as much credit to the former as the latter, but determine the case upon the acts and circumstances.

A book of accounts is produced.

It is evidently the property of the plaintiff, for the first part of it is filled with Japanese writing. The accounts relating to this business were kept in a rude way by defendant. Why does plaintiff furnish the book for defendant if he were defendant's hired man?

The accounts are the reckoning with the laborers, beginning at page 156 (as I have restored the paging where the corners have been cut out by the Japanese plaintiff to suit his purpose of marginal reference). In the handwriting of defendant the heading is:

Buki Hoohui i na la hana (a) kanaka (o) J. W. Puni (a me) Kupe Jap.

This in broken native, as the latter was. I translate it thus: "Partnership book of the working days of laborers of J. W. Puni and Jupe Japanese."

The first entry on this page is October 5th, 1878, and the last is April 5th, 1879.

The accounts of the different laborers, each on a page, are continued in the handwriting of the defendant, with the caption of the two names Puni and Jube, to page 173, except pages 170 and 171.

Beyond page 174 the pages are headed by Puni's name alone. The first entry being dated February 5th, 1880. Some entries under Puni and Jube are to December, 1879. See page 173.

On page 173 there is some account of figures and dates, but without explanation, with Jube's name at the top, but without an upper caption as all the laborers have.

This may be an account of money drawn by plaintiff. The dates, the 5th of the month, correspond with the dates in the other accounts, from which it appears that they drew money and paid the hands on the 5th of every month. The amounts are small, not the wages of $15 per month.

The defendant charges, in testimony, that the plaintiff borrowed the book and cut out the leaves containing his own account. There are leaves cut out between page 330 and page 337; that is, in the back part of the book, and very far separated from the neighborhood where the other accounts of these parties are kept. The plaintiff denies cutting them, and says that they were cut out by the defendant to obtain blank paper.

I adopt the latter view. I do not think it probable that the plaintiff would cut out his account, for by any showing he has not drawn what would be his share in the partnership.

The book therefore, in my view, strongly supports the theory of a partnership.

DEALINGS WITH THE KOLOA SUGAR COMPANY.

Mr. Wright, the manager and president of the Koloa Sugar Plantation and Company, and Mr. Kahlbaum, the book-keeper and cashier, had their dealings only with the defendant. They

knew that the plaintiff was the luna, the working manager. He brought the pay-lists stating the amount of wages and the money required. Wright and Kahlbaum would pay nothing without Puni's order. This merely shows their knowledge or want of knowledge of the business relation which might subsist between Puni and Jubey, but it does not negative the fact of partnership. It is consistent with all the circumstances of this case that they should know Puni as the responsible man in this case, and know little of Jubey.

Puni was in their employment; an old resident in Koloa, standing very high in estimation, as Mr. Wright testifies. Jubey, a Japanese, speaking but little Hawaiian and less English, and a new comer. In the arrangement between them, Puni undertook the financial part of the speculation, and it was not necessary that Jubey should be known as a partner and do financial business. And yet both Wright and Kahlbaum seemed to have some apprehension that Jubey was more than an employee. Jubey told Mr. Kahlbaum he was a half-partner, in presence of Mr. Wright. So far as Puni denied this to them is of no consequence to this case. He now denies it. It is anticipating my conclusion, but I will say here that I think Puni wished and designed it to appear to Wright and others that this was his sole enterprise, and that Jubey was no partner.

Jubey made some claim on Wright and Kahlbaum as a partner, for a share of the proceeds, as they told him to be present at the settlement they were going to make with Puni for the first crop. He did not attend at that hour, but two days after. But having left the business of dealing with Wright and Kahlbaum to Puni, he may have left him to settle this account of proceeds. Jubey's account was with Puni, not the Koloa Company. Wright and Kahlbaum could not prejudice Jubey's interest by paying the net balance to the partner Puni. Jubey could have made no claim of partnership before Wright and Kahlbaum which they could settle.

I do not think that by not appearing at the hour set by the

plantation for settlement, Jubey disclaimed or waived partnership.

Four of the lists for monthly wages are exhibited, in which Jubey puts himself down for $20, $15, $15, $30 and pair of shoes $6—$36.

It is argued from these and from the facts in testimony, that Puni had his wages of $50 per month credited on the account of advance on this canefield, that Jubey was a paid manager of Puni's field. Not conclusively, and against the evidence we have been considering, one partner may need to draw more for current private expenses, than another who may have other resources. In my view Puni was the chief capitalist, as Jubey was the working manager of the partnership. Jubey may have secured $15 per month certain for his labor, if the speculation should not afford him any more. Differences in their private drafts can be adjusted in the settlement of partnership accounts.

When the first crop was off, defendant paid plaintiff $150. He says it was a gift. He also says that in the engagement with plaintiff at $15 and food per month, he told him that if he wanted $20 per month he would give it to him, but that he continued at $15 per month.

Now it may be that defendant made a present of $150 (Mr. Kahlbaum says he asked for an order for $250 for that purpose) to the plaintiff. And it may be that plaintiff labored at a monthly stipend of $15, when he could have had $20 by asking for it, and labored so zealously that it was remarked upon by Wright and Kahlbaum, but my inference is that he drew the lesser sums that he might have more to his credit from the crop, and that the defendant made him the "present" of $150 in hopes that he might accept it as his share of the proceeds. The earnest assurance in the letter above cited, that he had been fair in some former enterprise of this kind and had not cheated his partner, and the effort to remove some anger on the part of the plaintiff, gives me an impression that Puni felt that Jubey had some reason to be suspicious of his fair dealing. There are indications in this case of deceitful dealing. Puni is the more

intelligent and experienced man; Jubey at some disadvantages of ignorance of language and in experience.

I have little to say about the dealings with the ratoon crop. Jubey labored on it for six months. It did not need irrigating. It grew very well; Mr. Wright says it has brought more than he expected. It does not appear that Jubey neglected his business, but he may have had reason to distrust his partner by that time, that he looked out for something else to do. He does not abandon his claim to proceeds, and now comes into Court when he finds that Puni has hypothecated them.

If he is found to be a partner for the plant cane, it follows that he is a partner for the ratoon crop on which he labored.

Thus I find a partnership, and it is ordered that both parties hereto make their accounts before D. K. Fyfe, Esq., Deputy Clerk, with reference to the Court for confirmation and final decree, the injunction to remain in force pending such proceedings.

Appeal noted.

*F. M. Hatch,* for plaintiff.

*W. O. Smith,* for defendant.

Honolulu, November 6th, 1882.